**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

*In re* **K.C.-1, K.C.-2, and K.C.-3**

**No. 25-196** (Ohio County CC-35-2024-JA-23, CC-35-2024-JA-24, and CC-35-2024-JA-25)

## MEMORANDUM DECISION

Petitioner Father K.C.-4[1] appeals the Circuit Court of Ohio County's February 21, 2025, order terminating his parental rights to K.C.-1, K.C.-2, and K.C.-3, arguing that the circuit court erred in denying him an improvement period and terminating his parental rights.[2] Upon our review, we determine that oral argument is unnecessary and that a memorandum decision affirming the circuit court's order is appropriate. *See* W. Va. R. App. P. 21.

In late 2023, the DHS implemented safety services in the home after both K.C.-3 and the mother tested positive for methamphetamine upon the child's birth. However, the DHS filed a petition in March 2024 after receiving another referral about injuries to K.C.-3. Initially, the parents claimed the child was injured when the mother, who was holding the child, tripped over a rug, hit the wall, and fell to the ground. However, in the petitioner's absence, the mother disclosed that the petitioner struck her during an argument when she was holding K.C.-3 and must have hit the child as well. The mother confirmed that both K.C.-1 and K.C.-2 were in the home when this occurred. According to the DHS, the mother had a bruise on her head where she claimed she was struck. The petitioner denied that there was any history of domestic violence, reiterating that the mother had simply tripped over a rug. Upon medical examination, it was confirmed that the child suffered from non-accidental head trauma, including three separate skull fractures and extensive brain injuries. During the DHS's investigation, the petitioner initially denied striking the child but later claimed he must have accidentally hit the child when the mother stood up in front of him. According to the DHS, the parents' explanations were inconsistent with the child's injuries. Ultimately, the DHS alleged, in pertinent part, that the parents exposed the children to domestic violence which led to the non-accidental injuries of K.C.-3.

---

[1] The petitioner appears by counsel Peter P. Kurelac, III. The West Virginia Department of Human Services ("DHS") appears by counsel Attorney General John B. McCuskey and Assistant Attorney General Lee Niezgoda. Counsel Tyler L. Cline appears as the guardian ad litem for K.C.-1 and K.C.-2 ("guardian"). Counsel Michael B. Baum appears as the guardian ad litem for K.C.-3.

[2] We use initials where necessary to protect the identities of those involved in this case. *See* W. Va. R. App. P. 40(e). Additionally, because the children and the petitioner have the same initials, we use numbers to differentiate them.

At the adjudicatory hearing in August 2024, the DHS presented K.C.-3's medical records and expert testimony from a pediatrician who explained the nature of K.C.-3's non-accidental injuries. The mother testified that she was struck only once by the petitioner and that this blow must have also hit the child. However, the pediatrician testified that "a single blow would not have caused all of the child's injuries." The petitioner testified that text messages from the mother demonstrated that she had caused the child's injuries and continued to deny any domestic violence. The circuit court found that the petitioner's attempt to explain the child's injuries was "not credible" and "inconsistent with the expert medical testimony." As such, the circuit court found that K.C.-3's injuries were non-accidental and that both parents failed to explain what had caused these injuries. Lastly, the circuit court found that there were issues of substance abuse in the home which also gave rise to concerns about the children's safety. Therefore, the circuit court proceeded to adjudicate the petitioner as an abusing and/or neglectful parent of all three children based on his role in perpetrating domestic violence. The petitioner then filed a motion for a post-adjudicatory improvement period. In response to this motion, the guardian ad litem filed a report which stated that, based on interactions with the petitioner, he "showed absolutely no accountability or remorse" for K.C.-3's extensive injuries. The guardian recommended that the improvement period be denied as to K.C.-3 but granted in regard to K.C.-1 and K.C.-2 due to their parent-child bond.[3]

At the dispositional hearing which concluded in February 2024, the DHS presented the petitioner's drug screens which contained approximately eight positive screens for marijuana, one positive screen for alcohol, and thirty-three missed screens.[4] The DHS also presented the petitioner's psychological evaluation, which stated that he had a "very poor" prognosis as to his ability to parent. The psychologist that evaluated the petitioner testified, as an expert, that the children would not be safe if returned to the petitioner's care. When testifying, the petitioner admitted that the text messages he produced at the adjudicatory hearing were fabricated as he had created and sent the messages from the mother's phone to try to incriminate her. The petitioner also introduced a letter showing he had enrolled in domestic violence intervention classes. Further, the petitioner admitted that he had intentionally struck the mother one time while she was holding K.C.-3 and that he had unintentionally hit the child in the process. The mother also maintained this story. However, expert testimony again reiterated that a single blow did not account for the full extent of the child's injuries as the child had suffered three separate skull fractures. The circuit court stated that "[b]oth [parents] have lied about the incident, telling various stories and misleading medical providers, authorities, CPS and/or this Court, raising concerns that they are covering for each other." Additionally, the circuit court noted that although the mother had obtained a domestic violence protective order against the petitioner, the order was terminated after she "reunited with him for a time during this case" despite K.C.-3 being injured because of their unhealthy relationship. Therefore, the circuit court denied the petitioner's motion for a post-adjudicatory improvement period. The circuit court proceeded to find that there was no reasonable

---

[3] Within this report, the guardian also recommended that the children be appointed two separate guardians ad litem given the children's conflicting interests. The circuit court adopted this recommendation which resulted in K.C.-3 having his own guardian ad litem apart from his older siblings.

[4] The petitioner does not dispute that he was ordered to remain drug and alcohol free during the underlying proceedings.

likelihood that the petitioner could substantially correct the conditions of abuse or neglect in the near future and that termination was necessary for the children's welfare. Thus, the circuit court terminated the petitioner's parental rights to all three children.[5] It is from the circuit court's dispositional order that the petitioner appeals.

On appeal from a final order in an abuse and neglect proceeding, this Court reviews the circuit court's findings of fact for clear error and its conclusions of law de novo. Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011). First, the petitioner argues that the circuit court erred in denying his motion for a post-adjudicatory improvement period. We disagree. Under West Virginia Code § 49-4-610(2)(B) a parent *may* be granted an improvement period if the parent "demonstrates, by clear and convincing evidence, that [they are] likely to fully participate in the improvement period." Further, a parent must first acknowledge the problem, as "[f]ailure to acknowledge the existence of the problem, . . . results in making the problem untreatable and in making an improvement period an exercise in futility at the child's expense." *In re Timber M.*, 231 W. Va. 44, 55, 743 S.E.2d 352, 363 (2013) (quoting *In re Charity H.*, 215 W. Va. 208, 217, 599 S.E.2d 631, 640 (2004)). Here, we refuse to accept the petitioner's contention that he acknowledged his role in the domestic violence. The petitioner repeatedly denied the abuse and gave a plethora of insufficient explanations of what happened to the child. Importantly, the petitioner sought to divert responsibility for his actions by introducing falsified evidence to mislead the parties and the circuit court. Furthermore, the petitioner had positive drug screens and missed a substantial number of screens as well, demonstrating a lack of compliance and participation. Based on these actions, the circuit court found that the petitioner's testimony was not credible and had concerns regarding his true intentions. We decline to disturb such findings on appeal. *See Michael D.C. v. Wanda L.C.*, 201 W. Va. 381, 388, 497 S.E.2d 531, 538 (1997) ("A reviewing court cannot assess witness credibility through a record. The trier of fact is uniquely situated to make such determinations and this Court is not in a position to, and will not, second guess such determinations."). Therefore, we conclude that the circuit court did not err in denying the petitioner's motion for an improvement period and proceeding to termination. *See In re Tonjia M.*, 212 W. Va. 443, 448, 573 S.E.2d 354, 359 (2002) ("The circuit court has the discretion to refuse to grant an improvement period when no improvement is likely.").

Lastly, the petitioner argues that the circuit court erred in terminating his parental rights. We again disagree. We have repeatedly held that, pursuant to West Virginia Code § 49-4-604(c)(6), circuit courts are permitted to terminate parental rights "[u]pon a finding that there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future and, when necessary for the welfare of the child." According to West Virginia Code § 49-4-604(d), "'[n]o reasonable likelihood that conditions of neglect or abuse can be substantially corrected' means that . . . the abusing adult . . . [has] demonstrated an inadequate capacity to solve the problems of abuse or neglect on [his] own or with help." Although by the dispositional hearing the petitioner had enrolled in domestic violence classes, the record reflects no further evidence of the petitioner's participation in these classes or how he benefited from this service. Additionally, as noted above, the petitioner failed to truly acknowledge the domestic violence and repeatedly failed

---

[5] The mother's parental rights were also terminated. The permanency plan for each child is adoption in their respective placements.

to take responsibility for his actions. Despite having a violent relationship, the petitioner and the mother reunited during these proceedings. As such, the circuit court had ample evidence to find that there was no reasonable likelihood that the petitioner could substantially correct the conditions of abuse or neglect in the near future. Furthermore, the petitioner's psychological evaluation resulted in a poor prognosis for proper parenting and expert testimony highlighted that the children's safety would be threatened if returned to the petitioner's care. Therefore, there was also sufficient evidence to find that termination of the petitioner's parental rights was necessary for the children's welfare. Accordingly, we conclude that the circuit court did not err in terminating the petitioner's parental rights. *See* Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011) ("Termination of parental rights . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood . . . that conditions of neglect or abuse can be substantially corrected." (quoting Syl. Pt. 2, *In re R.J.M.*, 164 W. Va. 496, 266 S.E.2d 114 (1980)))).

For the foregoing reasons, we find no error in the decision of the circuit court, and its February 21, 2025, order is hereby affirmed.

Affirmed.

**ISSUED**: January 29, 2026

**CONCURRED IN BY**:

Chief Justice C. Haley Bunn
Justice William R. Wooton
Justice Charles S. Trump IV
Justice Thomas H. Ewing
Justice Gerald M. Titus III

4